FILED

2014 DEC -3 AM 8: 31

IN THE UNTIED STTES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY_____
                    DEPUTY

| | | |
|---|---|---|
| LOUIS ROUSSET, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Civil Action No. A14CV0843LY |
| | § | |
| AT&T INC, | § | JURY |
| AND | § | |
| YAHOO, INC, | § | |
| | § | |
| Defendant's | § | |
| | § | |

**REBUTTLE MOTION TO:**

(AT&T)

**"MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION OR,**
**ALTERNATIVELY TO DISMISS IN FAVOR OF MANDATORY ARBITRATION"**

  Come NOW Pro-Se Plaintiff Louis Rousset, and moves this Honorable Court to proceed
with a trial by jury; where plaintiff will show subject matter jurisdiction and prove that plaintiffs
cause of action gives rise to article III standing and prove injury-in-fact through one of AT&Ts
employees.

  Plaintiff would request of this Honorable Court to put aside Defendants request for a
dismissal on 12(b)(1), Rule 12(b)(2) and rule 12(b)(6) in order to allow plaintiff to provide
documents proving article III standing.

  Plaintiff would also amend his cause of action in order to claim Mandamus jurisdictional
statue 65 for Section 1702, 501 privilege, Privacy Act of 1974 (5 U.S.C. 552a); in the hope that
this honorable Court would see fit to apply these statues to Mr. Stephenson .

1

Furthermore, plaintiff would request of this honorable Court a pre-trail conference to allow plaintiff to present article III standing.

Plaintiff would request a pretrial conference to confirm his claim of adhesion contract, breach of contract, mandatory arbitration and violations of plaintiff's due process rights, where AT&T have added a clause that plaintiff is barred from any "non-tangible" claims against AT&T and Yahoo. Where plaintiff asserts he has suffered injury-in-fact, that AT&T/Yahoo INC, is reading, collecting, and storing plaintiffs e-mail data.

Plaintiff would not have filed this cause of action if AT&T secretary to the President Gwendolyn Jones on June 10, 2014 would have indicated to plaintiff that AT&T does not read OR store Plaintiffs e-mail for itself or NSA.

AT&T/Mr. Stephenson acting in bad faith and a reckless disregard for plaintiffs rights. When AT&T refused to respond to plaintiffs demand letter he had one of two choices:

1. Plaintiff can do nothing about AT&Ts failure to respond to plaintiff's Demand Letter and give up plaintiff's privacy rights for failure to assert legal action in a timely manner.

2. Plaintiff can go to court in order to have AT&T respond to plaintiffs assertions; "does AT&T collect my e-mail data for themselves and 3rd party vendors for profit? And does AT&T allow NSA to collect domestic e-mail data from AT&T facilities.

Plaintiff asserts AT&Ts failure to responds to plaintiffs demand letter was deliberate in order to make plaintiff "*__burden of proof__*" extremely difficult to prove. How can plaintiff assert an adequate "injury in fact" to satisfy Article III cause of action if AT&T refuses to respond with a yes or no answer that they are reading, storing, collecting my personal e-mail? Plaintiff asserts AT&Ts failure to respond alone raises a due process claim. Where plaintiff asserts he has suffered injury-in-fact through a non tangible Constitutional violation, by Mr. Stephenson/AT&T INC, is reading, collecting, and storing plaintiffs e-mail data.

If AT&T is not collecting, reading, and storing plaintiffs e-mail for itself, all AT&T had to do was tell plaintiff "NO" this is not happening and plaintiff would have not file this cause of action.

## INTRODUCTION

The defendant has claimed plaintiff does not have standing under Article III due to the fact that plaintiffs account has not been, or will be, the subject of an NSL letter. Plaintiff apologizes to AT&T and this Honorable Court for failing to provide concrete evidence in his initial complaint.

In the summer of 2002 in an AT&T facility in San Francisco an AT&T Technician "Mark Klein" noticed something "peculiar" on the 6TH floor room 641A. This room had no door handles or access. Mr. Klein found all internet cables going from the 6TH floor to the 7TH floor were all AT&T internet communications are transmitted to all parts of the country. Klein's investigation show AT&T internet cables were going to a "splitter "directed to a private room 641A that was operated by the National Security Agency. Klein determined that the NSA was copying all AT&T internet traffic. Plaintiff contends that as an AT&T customer, his e-mail was copied and stored by the NSA, AT&T and 3rd party providers.

Plaintiff would request a "pre-trial" conference and subpoena Mr. Klein to testify at the conference in order to determine plaintiffs claim. Defendant Stephenson and AT&T have also stated that "no cause of action" is warranted against a telecommunication provider under 18 US.C. §2703(e) which states:

> "No Cause of Action against a Provider Disclosing Information under This Chapter. — No cause of action shall lie in any court against any provider of wire or electronic communication service, its officers, employees, agents, or other specified persons for providing information, facilities, or assistance in accordance with the terms of a court order, warrant, subpoena, statutory authorization, or certification under this chapter".

Defendant AT&T is relying solo on "certification" letter from FBI/NSA to absolve AT&T of any wrong doing. Yet AT&T has not responded to plaintiff's claim that AT&T is

reading, storing and collection plaintiff's e-mail. Therefore AT&T has no standing to rely on these statutes.

Defendant Stephenson and AT&T claim plaintiffs claim is without merit because federal Statue 18 US.C, §2703(d) provide "Requirements for a Court Order" to obtain and store e-mail data.

Plaintiff would request a Subpoena for CEO, Stephenson to refute or deny any knowledge of room 641A and determine if this data collection is still ongoing and the purpose for the splitter and data collection by AT&T and the NSA as stated by Mr. Klein.

Defendant is relying on 18 U.S.C, §2707(e) as a Defense, which states;

- (e) Defense.— A good faith reliance on—
- a court warrant or order, a grand jury subpoena, a legislative authorization, or a statutory authorization (including a request of a governmental entity under section 2703 (f) of this title);
- a request of an investigative or law enforcement officer under section 2518 (7) of this title; or
- a good faith determination that section 2511 (3) of this title permitted the conduct complained of;
- Is a complete defense to any civil or criminal action brought under this chapter or any other law.

Plaintiff asserts the defendant has to be aware of AT&T technicians Mr. Klein's testimony on the PBS documentary "frontline", and Katz v. United States, 389 U.S. 347 (1967), federal statues 18 U.S.C. § 2511 (i)(d)(e) and Doe v. Ashcroft/Gonzales/Mukasey/Holder.

The above case is a land mark decision where the first telecommunication provider Nick Merrill CEO Calyx challenged NSL letter in Federal Court and Appellate court favored Calyx that indicates NSLs where illegal. Defendants do not have standing on 18 U.S.C, §2707(e) "GOOD FAITH RELIANCE" based on Federal Court ruling and Statues.

## BACKGROUND/ REBUTTLE

Defendant contends under 12 U.S.C, § 3414 that FBI has authorization to obtain data in certain counter intelligence cases. This argument has no merit, due to the fact that plaintiff is only concerned with "domestic" e-mail data collection without a warrant and this statute is for international e-mail. Furthermore defendant lists 15 U.S.C, §1681(u) U.S.C, §1681 v, the collection of data for "intelligence or counter intelligence matter or international terrorism. What merit does this statue pertain to plaintiff for the collection of plaintiffs domestic e-mail?

If the NSA used any of these statutes domestically without a court order from a Federal Judge plaintiff contends that the NSA is violating the law and AT&T is conspiring with the NSA knowingly or unknowingly by failing to challenge any NSL letter demanding domestic e-mail. How many times has AT&T question an NSL?

Defendant has relied on another federal statute 18 U.S.C, §2709, which has no relevance or merit due to the fact that this statue deals with international terrorism and defendant fails to indicate how 18 U.S.C, §2709 is relevant to plaintiffs cause of action for domestic e-mail.

Plaintiff would also request at a pretrial conference that Mr. Brophys testimony to plaintiffs acceptance of contract that in said contract there is "NO" provision that allows AT&T to read, collect and store plaintiffs e-mail. Even if contract contained this access would it not violate plaintiff's rights? SEE Katz v. United States, 389 U.S. 347 (1967) and federal statues 18 U.S.C. § 2511 (i)(d)(e). Plaintiff contends that his claim is not hypothetical.

## ARGUMENT

### Page 4 Defendants claim of plaintiffs suffering from numerous defects.

(1)AT&T contends that they have immunity based on but 12 U.S.C, § 3414, 18 U.S.C, §2703, 2707(e), and 2709 which all pertain to "international terrorism and international e-mail collection in "good faith". Defendants have not shown "specific" Federal statute that protects AT&T from prosecution under federal law for collection of private domestic e-mail.

What Federal authorization was provided to AT&T for the NSA to access and insert a "splitter" in an AT&T facility and have a private room (641A) in said facility?

(2) Plaintiff does have a private right of action if his e-mail is directed through this *splitter* that directs all e-mail data to NSA and AT&T. (3) Defendants are correct in regard to 18 U.S.C, §2709 not pertaining to plaintiff. (4) Defendants contend that Randall L. Stephenson as CEO has no personal involvement in this matter. As CEO is it not "reasonable" that Mr. Stephenson is aware of room 641A in San Francisco that is transmitting data to the NSA. Is it "reasonable" that Mr. Stephenson is not aware of Doe v. Ashcroft/Gonzales/Mukasey/Holder, a land mark ruling against NSL letters being unconstitutional? The Federal Courts and state courts have always used the reasonable standard. Plaintiff contends that Mr. Stephenson is aware of the case law and room 641A and as CEO has a duty under "AT&T privacy provision in AT&T contract. If plaintiff made a mistake in filing against CEO Stephenson plaintiff most humbly apologizes to Mr. Stephenson and this Honorable Court.

## I. page 5 ARTICLE III STANDING

Defendants have relied on Rains v. Byrd U.S. 811, and Clapper v. amnesty international USA to affirm that plaintiff does not have Article III standing. Defendants are Arguing that plaintiff has not "demonstrated and injury, that is concrete, particularized, and actual or imminent or fairly traceable to challenged action".

Plaintiff apologizes for not providing his injury-in-fact in his initial complaint. Plaintiff will do so if plaintiff is allowed a pretrial conference to submit concrete, factual evidence (See Exhibit A). Plaintiff asserts that Mr. Klein's firsthand knowledge will confirm plaintiff's injury-in-fact, and article III standing.

## II. Mandatory Arbitration agreement

Defendants assert that plaintiff must abide by AT&T customer agreement. Plaintiff asserts that this agreement is an "Adhesion Contract" and AT&T is in a "material breach of contract" due to AT&Ts collecting, reading, storing plaintiffs e-mail for themselves and NSA.

Every internet provider has an arbitration clause when subscribing to their service OR plaintiff would not be allowed "internet access. According to FCC Commissioner, Michael Copps, has stated, "Universal access to broadband needs to be seen as a civil right". Not a Mandatory Binding Arbitration Contract for internet service.

What *__legal authority__* gives AT&T the legal right to collect, store, read, plaintiffs e-mail?

- I would ask AT&T and this court where I obtain internet access that will not contain a "Binding Arbitration agreement" that will allow me "free will"?
- Where are my rights to negotiating terms under AT&T contract?
- "IF" a consumer has no "free will" to choose to sign an "adhesion contract" for internet service or be denied internet access is it not "tantamount" to *__undue influence__* and *__duress__* on plaintiff by AT&T because a customer's "free will" is denied in order to access the internet.

## RESEARCH ON INTENRET PROVIDERS, AUSTIN TX;

- On 11/28/2014 I spoke with numerous agents, Grande communication (512-220-4600), Clear internet (512-366-3306), and Western broadband (512-257-1077) all of these telecommunications providers do not provide service in my area.
- Time Warner Communication (Caroline) provides service but mandates Mandatory arbitration agreement. Plaintiff confirms his research indicates no choices in this matter.

## Arbitration costs:

In Green Tree Fin. Corp. v. Randolph, 531 U.S. 79 (2000), the U.S. Supreme Court noted that "[i]t may well be that the existence of large arbitration costs could preclude a litigant . . . from effectively vindicating [her] rights in the arbitral forum.

- AT&T binding arbitration agreement in regards to Yahoo INC, (**section 14 dispute resolution with Yahoo is governed by the State of California**) mandates that plaintiff must seek all causes of action in Santa Clara California. Plaintiff lives in Texas and is disabled an unable to work. Plaintiffs' income is limited based on SSDI income stipend and in no way could afford to seek a "cause of action" in California.
- This mandate alone will bar plaintiff from effectively vindicating his rights in the arbitral forum due to the high cost of travel, hotel rooms and attorneys fees. Plaintiff is also barred from traveling because he is the primary care giver of his 5 year old son and must take him to school and pick him up very day. Plaintiff asserts this is a conflict of law

since plaintiff lives in Texas and plaintiff service contract is in Texas and asserted his cause of action is in Texas.

- Round trip cost on delta airlines: $737.expedia.com/Flights-Search. Granada Inn2.0 stars Map El Camino Real Santa Clara CA $102 per night. Plaintiff would assume 2 week stay; total without food $2165, total not including attorney's fee. Plaintiffs SSDI are $437 per month. Plaintiffs current cost of litigation is $400 filing fee and gas to and from court house and cost to send certified letters. Since plaintiff is pro-se plaintiffs cost to litigation is stated above. Due to these cost the arbitral forum is not "equally" accessible to plaintiff.

## AT&T IS WAGING A CAMPAIGN TO PRIVATIZE JUSTICE AND REWRITE CONSUMER PROTECTION LAW IN THEIR FAVOR

**Arbitration agreement number 13 section C**.

Defendants contract states; "if customer's complaint is deemed frivolous or brought under improper purpose as measure by Federal rules of civil procedures 11(b)" then fees are governed by AAA. WHY is AT&T allowed to use federal rules of civil procedures when it deems necessary to accomplish its goals, yet plaintiff is barred from any Federal litigation action against defendants because of arbitration contract agreement?

Defendant has relied on AT&T mobility v. Concepcion, stating (1) valid agreement:

- BUT if plaintiff s has no "free will" to choose between binding arbitration agreement and no binding arbitration agreement to access the internet does this not rise to a "due process" violation, ___*undue influence*___ and ___*duress*___ to plaintiff by AT&T.

In Engalla v. Permanente Medical Group, Inc. is a clear example that arbitration is not quicker or more efficient that a jury trial as requested by plaintiff.

- In March 1986, a radiologist working with Kaiser noted an abnormality on Wilfredo Engalla's lung and recommended a follow-up medical examination. For five years, Engalla was denied permission to see a doctor about the abnormality. In 1991, he was diagnosed with advanced lung cancer, which, by then, was inoperable.

- Engalla's attorney dogged a foot-dragging opponent to appoint arbitrators and to have the case heard before Engalla died. It took 144 days to schedule the arbitration hearing. The day after it was scheduled, Engalla passed away. His survivors shifted the claim to court and were initially given 90 days to conduct discovery on issues related to arbitration and to try to defeat the arbitration clause. That time eventually stretched to five months, during which 13 motions were filed and a dozen depositions were taken. During this time, the plaintiffs' counsel garnered facts that allowed the court to find that only 1 percent of Kaiser's cases had a neutral arbitrator appointed within the contractually required 60 days and that only 3 percent had one appointed within 180 days. On average, it took 674 days to appoint an arbitrator and 863 days to go to hearing. Going to trial in the court in which the case was filed took, on average, only about half to two-thirds as long. Plaintiffs' counsel provided evidence of delay in scheduling the arbitration, and Kaiser's former general counsel admitted during his deposition that Kaiser was responsible. The lawyers presented evidence that Kaiser kept extensive records about arbitrators it had used; indicating that the health plan might have delayed the process to seek a favorable decision maker.

Plaintiff asserts that a mandatory arbitration is lengthier and more costly to plaintiff in this circumstance as a pro-se counsel than a trial. Plaintiff asserts bias is shown against single plaintiffs leading to disenfranchisement of the poor and low socio economic status individuals like myself who have limited income, resources and are unable to afford counsel.

AT&T has also required plaintiff to use American arbitration Association (AAA). According to plaintiff's research:

- In arbitration, arbitrators tend to favor "repeat players," like AT&T and the institutional parties most likely to appear in future arbitrations, over individual parties such as consumers or workers who are not likely to be back in arbitration again. This bias is predictable where arbitrators compete to be selected by corporations, work under short-term contracts, and will lose future work if corporate parties perceive their decisions as too favorable or generous to plaintiffs.
- Arbitration proceedings can also be exceedingly expensive for consumers, with filing fees of several hundred dollars and arbitrators' fees (typically $200 to $450 per hour) running into the thousands of

dollars. In Sanderson Farms, Inc. v. Gatlin the farmer was billed by the American Arbitration Association (AAA) over $10,000 before there was even a hearing on his underlying claims.

- Plaintiff would request from AT&T quartile data for plaintiffs going to AAA arbitration against AT&T of outcomes favoring plaintiff verses outcomes favoring AT&T and time lines for arbitration trial and awards for plaintiffs.

- Plaintiff would also request arbitration and trial data from AT&T to compare outcomes on trail and awards for plaintiffs in trial verses awards from AAA arbitrations.

This is the same arbitration company plaintiff is required to use. See: AT&T contract paragraph 3Section c.

According to a San Francisco Federal Judge Bernard Zimmerman, she found that AT&T tried to eliminate its long distance customers' rights by inserting a broad new mandatory arbitration provision in a one-sided contract. AT&T's own research showed the majority of its customers would not read the entire contract. In fact the AT&T study concluded that after reading the bold text in the cover letter, which states "[p]lease be assured that your AT&T service or billing will not change under the AT&T Consumer Services Agreement; there's nothing you need to do," "[a]t this point most would stop reading and discard the letter."

- AT&T has used deception and fraud in its service contracts "IF" AT&T copied, stored, read plaintiffs e-mail. Plaintiff would ask this court to deem AT&T binding arbitration contract between plaintiff and defendant illegal, unconscionable and unenforceable based on "material breach of contract" as did Federal Judge Zimmerman.

- In July 2001 AT&T mailed a brochure to its long distance customers telling them they are forfeiting their constitutional rights to have their day in court as stated in their contract. Those few customers who scrutinized the fine print learned that they would have to submit major legal claims to private arbitration, that they would be prohibited from taking part in any class action against AT&T, that they would have to submit claims to arbitration within two years regardless of applicable statutes of limitations, and that they would never be able to recover consequential or punitive damages from AT&T in these arbitration proceedings."

Plaintiff asserts AT&T has implemented a "***selective campaign***" to rewrite the law in their favor and is tantamount to violating the equal protection clause of the 14TH amendment and

the due process clause. The Supreme Court in Hobby Lobby vs. U.S. has stated "corporations are people to". What person has the power to mandate arbitration against a conglomerate like AT&T? What individual person could require another person to sign a contract that would deny that person their constitutional rights to a trial by jury, OR NOT seek damages if they were hurt by an opposing party through "consequential and punitive damages". Is it "reasonable" that a person would sign a document like this if they had a choice to sign another document without these clauses?

In Ting v. AT&T, 319 F.3d 1126 (9th Cir. 2003), February 2003 the U.S. Court of Appeals for the Ninth Circuit struck down provisions in AT&T's arbitration clause that (a) stripped consumers of the right to file or participate in a class action; (b) stripped consumers of various rights and shielded AT&T from damages for willful misconduct under California's consumer protection laws; (c) required consumers to pay expensive fees for arbitration; and (d) contained a gag rule requiring consumers to keep secret any dispute they might have against AT&T. In October 2003, the Supreme Court let stand Public Justice's victory for consumers against AT&T. AT&T has also mandated against plaintiff rights to enter a class action.

Arbitration is also typically enshrouded in secrecy, with many arbitration services adopting rules that bar parties from telling anyone about cases in arbitration. Plaintiff would assert if he is unable to talk about the arbitration process that it violates plaintiff's 1ST amendment rights to freedom of speech.

Plaintiff believes he has shown the imbalance of said contract favors AT&T, Yahoo and all affiliates and their collection of plaintiffs e-mail data is a "material breach of contract" in violation of federal law.

**AT&T Service Contact page 19. <u>Limitation of liability</u>**

AT&T is re-writing the law with this clause by stating: "all partners with AT&T are absolved from indirect, incidental, special, consequential or exemplary damages, loss of profit, goodwill, or any "***intangible loses***". I would ask this court "would" AT&T sign this same contract if I presented it to them as a take it or leave ultimatum "in my favor?

**Service contract section 21, e. Survival**

AT&T has stated in this section that these denials of liability are "*indefinite*" beyond the ending of said contract.

- Would a reasonable person agree to this type of contract if they have a "free will", I demand to know from AT&T where do I obtain internet service from a telecommunication provider that do not contain these types of "*one sided conditions and terms*".

Plaintiff asserts he is disabled and lives on limited income and could no way afford these excess arbitration fees. Even if AT&T waived the fees the AAA favors AT&T over individual plaintiffs according to my research.

Mandatory arbitration to plaintiff is disenfranchisement to plaintiff because he is disabled and poor and unable to meet these high costs of arbitration. How is AT&T Arbitration not disenfranchisement for a disabled person like me, who is unable to work and lives on SSDI.

### III. PLAINTIFF WILL PROVE MERIT OF HIS CLAIM

AT&T claims that plaintiffs have not established Article III standing. Plaintiff would apologize to AT&T and this Court for not providing article III standing in his initial complaint. Plaintiff will prove his claim through concrete evidence (SEE Exhibit A).

### A. REBUTTLE TO: FEDERAL LAW PRECLUDES ALL CLAIM OF "NATIONAL SECURITY LETTER" CERTIFICATION.

AT&T is claiming immunity from prosecution for complying with a NSL certification letter, under 18 U.S.C 18 U.S.C §2703(e), §2707(e) and 18 U.S.C, §2709. This claim is without merit. The U.S. District Judge Susan Ilston in her ruling stated that NSLs are in direct violation of the first amendment. (SEE exhibit B). Defendants have relied on "stored communication act" to be barred from this cause of action. Yet defendants acknowledge 18 U.S. Code § 2701 as adefense. The stored communication has not merit "IF" Yahoo was reading, collecting and storing plaintiff's e-mail for their own private use.

In 2004 Nick Merrill CEO calyx an internet provider sued the Federal Government in Doe v. Ashcroft/Gonzales/Mukasey/Holder. The Appellate Court ruled that NSL letters are

"unconstitutional" and any claim by defendants AT&T and Mr. Stephenson that they were following the law based on 18 U.S.C 18 U.S.C §2703(e), §2707(e) and 18 U.S.C, §2709 in regard to domestic e-mail is without merit and lack standing in their claim. "Specifically" these statues do not pertain to "domestic e-mail". Defendants should not be providing customer data to "anyone", AT&T, NSA, FBI without a court order.

If the plaintiff were to wire tap a phone line without a court order he would be breaking the law under. 18 U.S.C. § 2511 (i)(d)(e) States:

> "such device is affixed to, or otherwise transmits a signal through, a wire, cable, or other like connection used in wire communication;**(d)** intentionally uses, or endeavors to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection; or **(e)** intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, intercepted by means authorized by sections 2511 (2)(a)(ii), 2511 (2)(b)(c), 2511(2)(e), 2516, and 2518 of this chapter.

> Plaintiffs phone line is the "same wire, cable" as stated above that is used by plaintiffs e-mail and plaintiff e-mail does carry the same protections of this federal statute and should be protected by the law.

Plaintiff is of the belief that the data line provided by AT&T when it crosses his property line of his homestead is protected by his 4TH amendment right to privacy, just as his phone line is under 18 U.S.C, § 2511 (i)(d), which states:

> (i) "wire, _**cable**_, or other like connection used in _**wire communication**_ and (d) " intentionally uses, or endeavors to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subchapter.

Is my e-mail data connection line a "cable or wire communication, I believe so. If AT&T is collecting my e-mail data for NSA and for themselves for direct advertising to my web page

AT&T is in violation of 18 U.S. Code § 2511(i)(d) and should be prosecuted to the full extent of the law.

**Rebuttal to: Page 10 section B.1 plaintiff does not have viable cause of action**

Plaintiff apologizes for repeating his claim but AT&T keeps contending the same issues. Plaintiff has shown through federal Judge's ruling and case law that AT&T is not abiding by federal law when AT&T is reading and obtaining domestic private e-mail for them to profit and for the NSA for spying, See: Doe v. Ashcroft/Gonzales/Mukasey/Holder, Katz v. United States, 389 U.S. 347 (1967)). The U.S. District Judge Susan Ilston in her ruling stated that NSLs are in direct violation of the first amendment. (SEE exhibit B).

**Page 11, section 2: rebuttal to: plaintiff does not have cause of action under federal law (count 2 and 6).**

**PRIVATE RIGHT OF ACTION page 11,**

Defendants assert plaintiff does not have a private right of action on counts 2 and 6 against AT&T sighting section 1702 and 1705 of title 18. Plaintiff would humbly apologize to this Court and AT&T for plaintiff claim on 1705 which was an error on plaintiff's part.

Plaintiff contends that AT&T should be held accountable for 1702 if this Court would allow plaintiff to assert Mandamus jurisdictional statue 65 for 1702.

Defendants assert Dennis v. Unites State post office for defense against 1702. Plaintiff has not brought his cause of action under tort claim act (FTCA) 28 U.S.C, § 1346(b)(1) as did Dennis in the above case.

- Plaintiff assert since the federal courts have interpreted e-mail to have the same rights as postal mail under Katz v. United States, 389 U.S. 347 (1967) and federal statues 18 U.S.C. § 2511 (i)(d)(e) that AT&T should be held accountable under these statues "if" AT&T read, collected, stored and plaintiffs e-mail data, in violation of constitutional rights to privacy. And AT&T is not a government agency and cannot be protected by Dennis v. Unites State post office. AT&T seems to want to have it both ways it suits their purpose.

14

Plaintiff will be amending his cause of action under Mandamus jurisdictional statute65 which states:

- However, the district court declined to dismiss the claims brought under the mandamus statute, relying on Chamber of Commerce v. Reich and principles of so-called "non-statutory" judicial review. It ruled that "the mandamus statute may provide an avenue to remedy violations of statutory duties even when the statute that creates the duty does not contain a private right of action." The district court concluded that FACA creates non-discretionary duties on the part of at least one of the federal defendants, and, therefore, that the plaintiffs properly stated a claim upon which relief could be granted.

Defendants rely on U.S. v. Jacobsen to refute plaintiff's 4TH amendment right to privacy claim of his private e-mail correspondence. Defendants have "erred" due to the fact that there was "probable cause" to open said package due to damage to package where "white powder" was leaking form package. Defendants contend first amendment does not apply to the conduct of private entities, Llyod v. Tanner. The only first amendment claim plaintiff is arguing is that AT&T is refusing to answer plaintiff demand letter, hiding behind NSL letters illegal mandate to not inform anyone of NSL requests.

Plaintiff only wants to know if AT&T is reading and storing his e-mail and giving it to the government and for them to be held accountable for violating plaintiff's rights if this is happening.

Defendants have introduced Bivens v. Six unknown federal agents403 U.S. 388 (1971). Plaintiff categorically states he has not brought up Bivens claim. Since defendants have brought this issue to light plaintiff will respond to the inadequacies of Bivens.

Plaintiff asserts AT&T was acting as an agent for the government illegally and albeit unconstitutionally. According to Amos v. United States,255 U. S. 313, 255 U. S. 317 (1921) and United States v. Classic,313 U. S. 299, 313 U. S. 326 (1941). An Agent/AT&T working for the United States government possesses a far greater capacity for harm than an individual trespasser exercising no authority other than his greed. Plaintiff also assert AT&T WAS NOT acting as a government agent when AT&T collected, stored and read plaintiff e-mail form themselves in violation of AT&Ts own privacy policy.

Defendant's main concern throughout this motion to dismiss has been to absolve AT&T from any liability or damages, for violating plaintiff constitutional rights either by asserting AT&T is protected against any actions under case law or federal statue. Or AT&T has no liquid assets and south western Bell is my internet provider. Yet, all of my bills have no south western bell name. I assert this Action by AT&T is a *deliberate* attempt to protect AT&T from any type of damages when AT&T has violated a law or is found guilty of a contract violation.

Plaintiff will be amending his motion and request $3000 damages for each illegal access of plaintiffs e-mail for violating his rights in order to comply with federal case law, where plaintiff failure to ask for damages resulted in a dismissal of his case: Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed, 939 (1946), that petitioner's claim for damages did '(arise) under the Constitution' within the meaning of 28 U.S.C. 1331(a).

- Plaintiff's main concern is was not about damages but in order to satisfy federal law plaintiff will seeks damages.
- Each violation should be weighed as an individual count and plaintiff would rely on a jury to determine "damages" since Congress, federal law, or the Supreme Court in Bivens have failed to provide "guideline" for 4TH amendment right to privacy damages that are non tangible.
- Congress has provided numerous guidelines to protect pharmaceutical corporations from law suits under "Vaccine Compensation Program, and for criminals under "federal sentencing guidelines" to have "equality" for convicts from all Federal Judges not to be allowed to use their personal bias. Plaintiff contends that this failure of congress and the Supreme Court to provide "guidelines" for violations of constitutional rights where there is no tangible loss violates plaintiff 14TH amendment rights to equal protection.

In Bivens As stated by Chief Judge Lumbard's assent. "For the reasons set forth below, I am of the opinion that federal courts do have the power to award damages for violation of 'constitutionally protected interests' and I agree with the Court that a traditional judicial remedy such as damages is appropriate to the vindication of the personal interests protected by the Fourth Amendment"

**Page 12 section 3 & 4 privacy act and 501**

Plaintiff believes that if AT&T read plaintiffs' e-mail that AT&T violated 501. The courts have stated non private right of action so plaintiff will request Mandamus jurisdictional statue 65 in the hope that this Court will allow action on plaintiffs part if it so deems reasonable.

**Page 13, section 5: Ordinary commercial contract/Material Breach of contract by AT&T**

1. Plaintiff contends AT&T may not have a fiduciary duty, but plaintiff will amend his cause of action to change "Fiduciary duty" to "contractual duty" in the same meaning of protections under contract law. Plaintiff asserts "ALL" terms and conditions in the contract deny plaintiff redress for:

- Trial by jury
- Damages under contract law
- Mandate to use arbitration and mandate to use American Arbitration Association.
- All of these "clauses" are one sided. AT&T has shown it has "substantial unequal bargaining position" and that enforcement of this contract would be manifestly unfair and oppressive to plaintiff's rights.
- Plaintiff contends based on prior AAA cases that a trial by jury in plaintiffs case is much more cost effective due to the high cost of arbitration verses a jury trial. My cost for a jury trial is currently $450.
- Can AT&T give me costs and time frame for current cost of arbitration verses my cost to go to trial?
- Can AT&T categorically claim that arbitration is substantially lower in cost than trail and fair and impartial through prior AAA cases?
- Can AT&T claim that AAA does not have a secrecy clause that would deny plaintiff from talking about arbitration that would violate plaintiff's first amendment rights?
- Again plaintiff would humbly ask this honorable court where in the constitution or federal or state law allows AT&T the "***legal authority***" to re-write Contract law and eliminate "basic" contract law redress for "non performance" and "breach of contract" in AT&Ts favor.

- Plaintiff demand from AT&T percentages from AAA of individual citizens that have gone to arbitration and won against AT&T verses individual citizens who have lost and the average cost of arbitration for said citizens.

2. Plaintiff contends that AT&T breached its contract with plaintiff when AT&T provided plaintiffs e-mail data to NSA and AT&T collected and stored plaintiffs e-mail for AT&T in order to profit through "specified" ads on plaintiff web pages.

**PARAGRAPH 2, PAGE 13 sections 5:**

Defendant AT&T and Mr. Stephenson categorically state that AT&T takes privacy seriously (**page 13, paragraph 2**). Stating that; "all employees must follow the law, rules, regulations, "**privacy of communications**" and court that apply to AT&T. SEE AT&Ts exhibit D Brophy Declaration". Nowhere in the privacy policy or declaration does it state that AT&T reads, stores, and disseminates plaintiffs e-mail.

Clearly AT&T has stated "**privacy of communications**" which is a direct correlation to, Katz v. United States, 389 U.S. 347 (1967)

AT&Ts reading of plaintiffs e-mail and storing plaintiffs e-mail and providing NSA with plaintiffs e-mail is a "material breach of contract", where AT&T has violated plaintiff's 4TH amendment right to privacy. Plaintiff has found no clauses in AT&T terms and conditions that indicate plaintiff is giving up his right to privacy of his e-mail. Yet AT&T technician Mark Klein has stated the opposite of what AT&T is stating in their privacy policy and Mr. Brophy declaration. Even if AT&T did say they read plaintiffs e-mail plaintiff contends it is in violation of Katz v. United States, 389 U.S. 347 (1967)). A material breach of contract is nonperformance of a contractual duty. No indication in the contract divulged any exclusion of constitutional rights. This action by AT&T constitutes a material breach of contract. Where Mr. Stephenson indicated AT&T takes customers right to privacy "Seriously" and does not violate the law, as stated in paragraph 2, page 13.

**Section C, page 14: Claims against Mr. Stephenson**

If plaintiff has made a mistake in filing his claim against Mr. Stephenson, plaintiff would most humbly apologize to this honorable court and Mr. Stephenson. Plaintiff believes that he needed to serve Mr. Stephenson in order to be in compliance with this cause of action.

## CONCLUSION

For the forgoing reasons, plaintiff asserts that he has meet Article III standing injury-in-fact after this honorable court sees PBS frontline documentary that show AT&T technicians testimony that AT&T is violating plaintiffs right to privacy.

Plaintiff asserts that AT&T violated their own privacy policy and plaintiffs 4TH amendment right to privacy and is in "Material Breach of contract". Therefore, plaintiff believes that mandatory arbitration is not warranted based on AT&T conduct and plaintiffs assertions.

Congress has failed to provide guidelines for violations of constitutional rights for *intangible loses* and the Supreme Court post Bivens case is resistant to said damages. Yet the Supreme Court indicated that general damages would be recoverable without proof of individualized injury, such as pecuniary loss or mental distress.

Therefore plaintiff would ask this Court in the alternative to consider these types of damages if Mr. Stephenson/AT&T acted in bad faith and a reckless disregard for plaintiff's rights

Plaintiff humbly prays that this Honorable Court would see fit to allow plaintiff to have a jury trial in order to determine the issue of telecommunication providers reading, storing and copying domestic e-mail of their customers without legal authority for their own monetary gain.

Dated: December 2, 2014
Sent certified postal mail:
Article # 7014 1820 0002 1034 1622
AT&T INC,
208 South Akard Street Dallas, TX 75202,
 210-283-1260

BY: _Louis Rousset_
Louis Rousset
Pro SE Counsel
11802 Hornsby St
Austin Texas 78753
512-833-9360

## CERTIFICATE OF SERVICE

I, Louis Rousset, hereby certify that on December 2, 2014, a true and correct copy of the foregoing **REBUTTLE MOTION AGAINST/ MOTION TO DISMISS FOR LACK OF SUBJCET JURISDICTION OR TO DISMISS IN FAVOR OF MANDATORY ARBITRATION** was served by U.S. Postal certified mail upon AT&T CEO Randal L. Stephenson on record:

Attorney of record Wittliff /Cutter PLLC
1803 West Avenue
Austin Texas 78701
Sent certified postal mail: Article # 7014 1820 0002 1034 1622

AT&T INC,
208 South Akard Street Dallas, TX 75202,
 210-283-1260

Louis Rousset PRO-SE Counsel

Exhibit A-CD



Exhibit B

# Judge rules that FBI 'National Security Letter' requests are illegal

By [...] on March 17, 2013 6:17 pm

Like 18     Tweet 18          Comments:





Jun 3:
Obama Waives Credit Score Requirement
If you owe less than $625,000 or so it costs, use the President's Refi Program, You'll be shocked when you see how much you can save.
PICK YOUR AGE
18-25    26-35    36-45
46-55    56-65    66-75
Over 75
Calculate New House Payment

The U.S. Justice Department just had their biggest blow in regards to obtaining Internet and telephone surveillance data. A U.S. judge just ruled that National Security Letters (NSLs) are illegal under the U.S. Constitution.

The FBI, DEA and other federal police agencies use what is referred to as "National Security Letters", which are known simply as NSLs, in order to conduct surveillance on people or businesses without the need of a search warrant. That has all changed now when a U.S. Federal court ruled NSLs to be illegal.

The history of NSLs dates back nearly 4 decades to the 1970s when the Justice Department claimed that getting a search warrant for every incident was time consuming and detrimental to any particularly important cases. When the U.S. was under terrorist attacks in September 2001 (9/11), many new laws and statues were rushed through such as the U.S. Patriot Act that only amplified the Justice Department's ability to issue NSLs, which includes data on American citizen's Internet E-mails.

Just recently Google disclosed publicly just how many NSL requests they have received, but only listed the numbers without any particular specifics or which people were investigated. When a company gets an NSL request the law forbids them from disclosing the request to anyone else unless it is a company adviser or attorney for the corporation or ISP. Nevertheless, Google said their latest policy of NSL and other national governments requests and warrants needed to be public information.

U.S. District Judge Susan Illston concluded in the ruling that NSLs are in direct violation of the First Amendment and separation of powers principles. However, the ruling has a stay pending appeal or 90 days if no appeal due to what judge Illston referred to as "national security issues at stake."

LATEST HEADLINES



## HTC One (E8) announced with flagship specs, polycarbonate body

June 6, 2014

The HTC One (E8) brings hardware similar to the HTC One M8 but packs it all in a less premium plastic body. The HTC One M8 Ace has made numerous appearances...



**Fight summer with JAXA's awesome space tech cooling vest**



**Samsung Gear 3 tipped for intro alongside Note 4, 'Gear Solo' production to be limited**



**Apple officially announces iOS 8 with lots of new features**



**Take a look a ADATA's Computex 2014 booth**