IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| LOUIS ROUSSET, § | |
|         Plaintiff, § | |
| V. § | |
| § | |
| AT&T INC. AND RANDALL § | A-14-CV-0843-LY-ML |
| STEPHENSON, YAHOO, INC., AND § | |
| MARISSA MAYER § | |
|         Defendants, § | |
| § | |
| § | |

**REPORT AND RECOMMENDATION OF THE**
**UNITED STATES MAGISTRATE JUDGE**

Before the court are Plaintiff's "'Amended Complaint' Plaintiff's Fourth Amendment Complaint" [Dkt. #50], Plaintiff's "Motion to Re-Instate Yahoo, Inc., as a Defendant in the Above Styled Cause of Action" [Dkt. #69], Defendant Yahoo, Inc. ("Yahoo")'s "Motion to Dismiss Amended Complaint" [Dkt. #65], Defendants AT&T, Inc. and Randall L. Stephenson (collectively, AT&T)'s "Motion to Dismiss for Lack of Subject Matter Jurisdiction or, Alternatively, to Dismiss In Favor of Mandatory Arbitration" [Dkt. #66], "Plaintiff's Response to AT&T and Yahoo, Inc, Motion to Dismiss 5, 22, 2015: Motion to Dismiss for Lack of Subject Matter Jurisdiction or, Alternatively, to Dismiss In Favor of Mandatory Arbitration" [Dkt. #70], Yahoo's "Reply in Support of Motion to Dismiss Amended Complaint" [Dkt. #72], and AT&T's "Reply in Support of Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction or, Alternatively, to Dismiss In Favor of Mandatory Arbitration" [Dkt. #71].

The motions and related briefing were referred by United States District Judge Lee Yeakel to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the

United States District Court for the Western District of Texas.  After reviewing the pleadings, the relevant case law, as well as the entire case file, the undersigned issues the following Report and Recommendation.

## I. PROCEDURAL HISTORY

Plaintiff Louis Rousset ("Rousset") filed his original complaint, styled "Plaintiff's Fourth Amendment Complaint," on September 4, 2014 [#1], naming as Defendants AT&T Inc. and its C.E.O., Randall Stephenson (collectively, the "AT&T Defendants),[1] and Yahoo, Inc., and its C.E.O., Marissa Mayer.  Plaintiff asserted various causes of action concerning "plaintiffs [sic] recent notification by the media, that the National Security Agency and or the Federal Bureau of Investigations through an NSL letter is demanding of the plaintiffs [sic] internet and phone company providers AT&T/Yahoo for personal e-mail data, without a probable cause hearing or a warrant from a Federal Judge."  Compl. [#4] at ¶ 5.  Plaintiff has since been allowed to amend his complaint multiple times.  His Fourth (and final) "'Amended Complaint' Fourth Amendment Complaint" [Dkt. #50] (the "Amended Complaint") is the operative pleading in this case.  The court has instructed Plaintiff that no further amendments will be allowed without a showing of good cause. Order of April 22, 2015 [Dkt. #59].

Plaintiff's final Amended Complaint reiterates his contention that Defendants are providing the contents of his email and internet history to government agencies in violation of his rights under the Fourth Amendment of the United States Constitution.  Am. Comp. [Dkt. #50] at ¶¶10-15.  Plaintiff additionally contends that Defendants have "misrepresented . . . .

---

[1] The AT&T Defendants note that Plaintiff has incorrectly named AT&T, Inc. as the corporate defendant in this case, instead of Southwestern Bell Telephone Company d/b/a AT&T Texas, but stipulate that the Motion to Dismiss is filed on behalf of the defendant real party in interest.  AT&T's Mot. Dism. [Dkt. #66] at n.1; *see* Fed. R. Civ. P. 15(c)(1)(C).

terms and conditions of their contract" with the Plaintiff in that they are scanning and analyzing the content of his email and web browsing data for "private use and advertising purposes." *Id.* at ¶¶ 8-9.  Plaintiff is not suing any government agency, but contends that Yahoo and AT&T were acting as quasi-government actors when they allegedly provided his personal information to unspecified government agencies.  *Id.* at ¶¶ 33-35.  Plaintiff further contends Defendants were acting in their capacity as private companies when they accessed his email and web history for commercial purposes.  *Id.* at ¶¶ 37, 177.  Plaintiff asserts the following causes of action based on Defendants' alleged unauthorized monitoring of the contents of his email and internet history:

### Claims against Defendants as Quasi-Government Actors:

- recovery under the Federal Tort Claims Act, *id.* at ¶¶ 33-36;
- a writ of mandamus and/or relief pursuant to the All Writs Act, *id.* at ¶¶ 38;
- a *Bivens* claim for violation of Plaintiff's Fourth and Fifth Amendment rights, *id.* at ¶¶ 40-41, 98-111;
- a claim for violation of the Privacy Act of 1974 (5 U.S.C. § 552a), *id.* at ¶ 81;
- a claim for violation of the Communications Assistance for Law Enforcement Act (18 U.S.C. § 2522), *id.*; and
- a claim for "conspiracy to defraud the citizens of the United States by illegally accesses [sic] domestic email content without a warrant or certification letter" in violation of 18 U.S.C. § 371 (Conspiracy to defraud United States).*Id.* at ¶¶ 140-142.

**Claims against Defendants as Private Actors:**

- Violations of the Stored Communications Act (SCA), 18 U.S.C §§ 2701 *et seq.*, and Electronic Communications Privacy Act (ECPA), 18 U.S.C. §§ 2510 *et seq.*: Plaintiff contends the terms in Yahoo and AT&T's consumer contracts regarding the scanning, analyzing, and storage of email and internet content violate the SCA and the ECPA. *Id.* at ¶¶ 29, 37, 42-57. Plaintiff contends the contracts are contracts of adhesion and therefore do not give consumers any real ability to opt out or withhold consent, and therefore any "consent" safe harbor under the statutes should not apply. *Id.* at ¶¶ 56-57, 85, 102, 114

- Fraud/Fraudulent Inducement: Plaintiff contends the terms in Yahoo and AT&T's consumer contracts regarding the scanning, analyzing, and storage of email and internet content are fraudulent because they mislead customers as to the actual extent of Defendants' access to the content of personal communications. *Id.* at ¶¶ 8, 49.

- Breach of Contract: Plaintiff contends Yahoo and AT&T have a contractual obligation to safeguard his private email content and data, which they have breached by providing data to government agencies and commercial third parties. *Id.* at ¶ 83.

Defendant Yahoo has filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) (lack of subject matter jurisdiction), 12(b)(3) (improper venue), and 12(b)(6) (failure to state a claim on which relief can be granted). Yahoo's Mot. Dism. [Dkt. #65] at 1. The AT&T Defendants have filed a motion to dismiss for lack of subject matter jurisdiction or alternatively, on the grounds that all of Plaintiff's claims are subject to mandatory arbitration.

4

AT&T's Mot. Dism. [Dkt. #66] at 1. The AT&T Defendants further assert that Plaintiff's claims fail on their merits. *Id.* at 13-19.

For the reasons explained in detail below, the court finds Plaintiff has not alleged any facts that establish standing with respect to his claims against the Defendants as quasi-government actors, or as private actors liable for any alleged cooperation with government surveillance of domestic telecommunications, and therefore these claims should be dismissed for lack of subject matter jurisdiction. As to Plaintiff's claims against the Defendants for breaches of the ECPA and SCA, fraudulent inducement, and breach of contract in their capacity as private commercial actors, the court finds standing is adequately alleged but, nevertheless, the claims cannot proceed.

The arbitration clause in AT&T's terms of service is enforceable and warrants dismissal of Plaintiff's claims against AT&T for breach of contract, fraud, and ECPA/SCA claims. Yahoo's chosen method of invoking its forum selection clause (through Fed. R. Civ. P. 12)(b)(3) has been foreclosed by recent Supreme Court precedent, but the court finds Plaintiff's breach of contract, fraud, and ECPA/SCA claims against Yahoo fail on their merits. Finally, the court finds Plaintiff has not made any factual allegation that would support a claim against the individual defendants, Randall Stephenson and Marissa Mayer, and therefore his suit against the individual defendants should be dismissed for failure to state a claim.

## II.   STANDARD OF REVIEW

### A.   **Dismissal Based on Lack of Subject Matter Jurisdiction**

"When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "Moreover, when a

complaint could be dismissed for both lack of jurisdiction and failure to state a claim, 'the court should dismiss only on the jurisdictional ground under [Rule] 12(b)(1), without reaching the question of failure to state a claim under [Rule] 12(b)(6).'" *Crenshaw-Logal v. City of Abilene*, 436 F. App'x. 306, 308 (5th Cir. 2011) (quoting *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977)). This practice prevents courts from issuing advisory opinions. *Crenshaw*, 436 F. App'x at 308 (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998)).

The federal courts are courts of limited jurisdiction. *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1146 (2013) (citing U.S. CONST. art. III). A case must be dismissed for lack of subject matter jurisdiction "when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). A motion to dismiss for lack of jurisdiction under 12(b)(1) may be decided on: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts, plus the Court's resolution of disputed facts. *Freeman v. United States*, 556 F.3d 326, 334 (5th Cir. 2009).

Plaintiff asserts this court has subject matter jurisdiction over his claims because they implicate federal statutes and constitutional rights. Am. Compl. [Dkt. #50] at ¶ 50, 28 U.S.C. § 1331. To establish this court's jurisdiction, however, Plaintiff must further identify an actual "case or controversy" arising out of the federal questions he raises. *Daimler-Chrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006). Defendants assert he cannot do so, and therefore his claims must be dismissed for lack of jurisdiction. *See generally* Mots. Dismiss [Dkt. # 65, 66].

B. **Dismissal Based on Arbitration Agreement**

The AT&T Defendants have moved to dismiss any of Plaintiff's federal court claims that survive their standing argument in favor of a binding arbitration clause in Plaintiff's service

agreement. *See generally* AT&T's Mot. Dism. [Dkt. #66]. The Fifth Circuit recently reaffirmed that a mandatory arbitration clause is properly considered under Federal Rule of Civil Procedure 12(b)(1) because the binding agreement to arbitrate deprives the district court of jurisdiction over the case. *Gilbert v. Donahue*, 751 F.3d 303, 306-07 (5th Cir. 2014). Therefore, the AT&T Defendants' motion to dismiss in favor of arbitration will be considered as a motion to dismiss for lack of subject matter jurisdiction under the same general standards outlined in Section IIA, above. *Id.*

      C.    **Dismissal Based on Forum Selection Clause**

The Yahoo Defendants' motion to dismiss the claims against them based on the existence of a forum selection clause is premised on Federal Rule of Civil Procedure 12(b)(3). Yahoo's Mot. Dism. [Dkt. #65] at 8. But the Supreme Court has expressly held that a motion to dismiss under Rule 12(b)(3) is not a proper mechanism for enforcing a forum selection clause if the plaintiff's claims are brought in a venue that is "proper" pursuant to 28 U.S.C. § 1391. *Atlantic Marine Construction Co., Inc. v. U.S. District Court for the Western District of Texas*, 134 S. Ct. 568, 577, (2013).

Yahoo has not challenged Plaintiff's factual allegations that venue is appropriate in the Western District of Texas because "a substantial part of the events or omissions giving rise to the claim" occurred here. 28 U.S.C. § 1391, Am. Compl. [Dkt. #50] at ¶ 16. Therefore, it appears that, to the extent Defendants seek to enforce their forum selection and arbitration clauses via a dismissal under Rule 12(b)(3), the motions must be denied. *1-Stop Fin. Serv. Ctrs. of Am., LLC v. Astonish Results, LLC*, No. A-13-CA-961-SS, 2014 U.S. Dist. LEXIS 8117, * 17 (W.D. Tex.

Jan. 23, 2014) (citing *Atlantic Marine*, 134 S. Ct. at 577).[2] As Yahoo has also moved to dismiss Plaintiff's claims on their merits, the court must finally analyze these remaining claims under the standards outlined by Federal Rule of Civil Procedure 12(b)(6).

### D. **Dismissal for Failure to State a Claim on Which Relief Can Be Granted**

When evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6), the complaint must be liberally construed in favor of the plaintiff and all facts pleaded therein must be taken as true. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). Although Federal Rule of Civil Procedure 8 mandates only that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief," this standard demands more than unadorned accusations, "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Bell Atl. v. Twombly*, 550 U.S. 544, 555-57 (2007). Rather, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.*, 550 U.S. at 570. The Supreme Court has made clear this plausibility standard is not simply a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted

---

[2] Notably, *Atlantic Marine* did not foreclose other potential procedural avenues for the enforcement of forum selection clauses. Specifically, *Atlantic Marine* expressly declined to analyze whether Federal Rule of Civil Procedure 12(b)(6) is an appropriate means of enforcing a forum selection clause, 134 S. Ct. at 580. The Fifth Circuit has not considered whether a forum selection clause can be enforced using a 12(b)(6) motion to dismiss, but other circuits have affirmed this approach. *Claudio-de León v. Sistema Universitario Ana G. Méndez*, 775 F.3d 41, 46 (1st Cir. 2014); *Salovaara v. Jackson Nat'l Life Ins. Co.*, 246 F.3d 289, 298 (3d Cir. N.J. 2001) (expressly holding that "a 12(b)(6) dismissal is a permissible means of enforcing a forum selection clause that allows suit to be filed in another federal forum.") Yahoo did, in fact, file a 12(b)(6) motion , but the gravamen of its 12(b)(6) argument is that Plaintiff's claims are substantively without merit. In light of the fact that Yahoo has briefed its 12(b)(6) motion on the merits of Plaintiff's claims, the court will not delve deeply into the question of whether to construe Yahoo's Rule 12(b)(3) forum selection argument on alternative 12(b)(6) grounds. It is worth noting in passing, however, that forum selection clauses in "click-through" contracts like Yahoo's Terms of Service have been rountinely upheld. *See, e.g.*, *Recursion Software, Inc. v. Interactive Intelligence, Inc.*, 425 F. Supp. 2d 756, 782 n. 14 (N.D. Tex. 2006); *Realpage, Inc. v. EPS, Inc.*, 560 F. Supp. 2d 539, 545 (E.D. Tex. 2007). By resolving Yahoo's 12(b)(6) motion on other, more fully briefed grounds, the Magistrate Court offers no opinion on the enforceability of the forum selection clause if properly raised.

unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The standard is properly guided by "[t]wo working principles." *Id*. First, although "a court must 'accept as true all of the allegations contained in a complaint,' that tenet is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*., 556 U.S. at 678. Second, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*, 556 U.S. at 679. Thus, in considering a motion to dismiss, the court must initially identify pleadings that are no more than legal conclusions not entitled to the assumption of truth, then assume the veracity of well-pleaded factual allegations and determine whether those allegations plausibly give rise to an entitlement to relief. *Id.* If not, "the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Id.* (quoting FED. R. CIV. P. 8(a)(2)).

**III.    Analysis**

    A.    **Plaintiff Has No Standing to Sue For Any Alleged Government Data-Mining**

Plaintiff has alleged a number of claims against AT&T and Yahoo in their capacity as alleged "quasi-government actors," and alternatively, as private companies providing data to the government. But the issue of whether the telecommunications providers are government actors or private actors comes into play only after Plaintiff establishes he has standing to pursue claims relating to government surveillance of domestic telecommunications content. As instructed by the Fifth Circuit, the court turns first to the jurisdictional analysis. *Ramming*, 281 F.3d at 161.

"Article III" courts are limited to deciding actual "cases or controversies" capable of judicial resolution. *Amnesty Int'l*, 133 S. Ct. at 1146. "'One element of the case-or-controversy requirement' is that plaintiffs 'must establish that they have standing to sue.'" *Id.* (quoting

9

*Raines v. Byrd*, 521 U.S. 811, 818 (1997)). "To meet the standing requirements of Article III, '[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'" *Raines*, 521 U.S. at 818 (citing *Allen v. Wright*, 468 U.S. 737, 751 (1984)). The injury identified must be present or imminent. *Amnesty Int'l*, 133 S. Ct. at 1150. To establish standing, a plaintiff's factual allegations must identify "concrete evidence to substantiate [his] fears," *id.* at 1154, and cannot "rest on mere conjecture about possible governmental actions." *Id.* "[S]tanding theories that rest on speculation about the decisions of independent actors" do not satisfy the case-or-controversy requirements of Article III. *Id.* at 1150.

Plaintiff is not the first or, by any means, the only internet user to attempt to litigate his concerns regarding the National Security Agency (NSA)'s dragnet email surveillance programs. *See, e.g.*, *Amnesty Int'l*, 133 S. Ct. 1138 (2013); *ACLU v. Clapper*, 785 F.3d 787 (2d Cir. 2015); *Obama v. Klayman*, 800 F.3d. 559 (D.D.C. 2013); *NSA Telecommunications Records Litig. V. Verizon Communs. Inc.*, 669 F.3d 928 (9th Cir. 2011); *Jewell v. Nat'l Security Agency*, 673 F.3d 902 (9th Cir. 2011). In fact, Plaintiff himself relies liberally on the factual allegations in *Hepting v. AT&T*, 671 F.3d 881 (9th Cir. 2011) (cert. denied by *Hepting v. AT&T Corp.,* 133 S. Ct. 421 (Oct. 9, 2012).[3] All of Plaintiff's specific factual allegations concerning government

---

[3] *Hepting* considered—and upheld—the constitutionality of Section 802 of the Foreign Intelligence Surveillance Act (FISA), 50 U.S.C. § 1885a, known as the FISA Amendments Act of 2008. This statute provides both prospective and retroactive immunity to commercial telecommunications providers for assistance provided to the government in its intelligence gathering efforts, upon a certification to the district court from the Attorney General verifying that one of five statutory conditions was met. *Hepting*, 671 F.3d at 890. The statute "dovetails with an existing comprehensive statutory framework that grants the Executive Branch authority to enlist telecommunications companies for intelligence gathering, to protect those companies from suit, and to keep their efforts secret." *Id.* at 891. Both AT&T and Yahoo assert immunity from suit under some of the other portions of this "comprehensive statutory framework." *Id.* In particular, both companies invoke the immunity provisions of 18 U.S.C.§§ 2703(e) and 2707(e), which provide immunity to telecommunications companies who provide assistance in good faith reliance on, *inter alia*, a court order, legislative authorization, or statutory authorization. It is not necessary, however, to engage in a fact-sensitive, likely *in camera* review of whether the telecommunications companies' alleged government surveillance cooperation with regard to Rousset was in good faith reliance on one of

surveillance are drawn from testimony given at various stages of the *Hepting* litigation in 2007 (a case to which he was not a party), or from a documentary television show that first aired in 2006 (which Plaintiff did not view until some years later).  Am. Compl. [Dkt. #50] at ¶ 73.  Though the gradual development of the public record regarding the NSA's domestic surveillance program may indeed provide, as Plaintiff terms it, "secondary proof" of the existence of a public-private surveillance partnership, Plaintiff's generalized reliance on public information concerning the government's domestic surveillance efforts is not enough to establish that he himself has been injured in any redressable way.  *Amnesty Int'l*, 133 S. Ct. at 1145-48.

In September of 2015, Judge Cathy Bissoon of the United States District Court for the Western District of Pennsylvania presided over a similar "dragnet surveillance" case brought against the United States.  *Schuchardt v. Obama*, No. 14-705, 2015 U.S. Dist. LEXIS 132962 (W.D. Pa. Sept. 30, 2015).  In a well-reasoned and persuasive opinion on standing, Judge Bissoon conducted a thorough analysis of the growing body of case law regarding what is necessary to establish standing to sue for alleged NSA surveillance of domestic telecommunications. *Id.* at *6-17 (discussing *Amnesty Int'l*, 133 S. Ct. at 1145-48; *ACLU*, 785 F. 3d at 796; *Jewel*, 673 F.3d at 906; *Klayman*, 800 F.3d 566-68).   Judge Bissoon noted:  "In reviewing the foregoing decisions, a meaningful distinction emerges.  In situations where plaintiffs are able to allege with some degree of particularity that their own communications were specifically targeted . . . courts have concluded that the particularity requirement has been satisfied." *Schuchardt*, 2015 U.S Dist. LEXIS 132962 at *15.  Examples include standing based on a leaked FISC order (*ACLU*, 785 F.3d at 801) or reliance on a "detailed insider account" that

---

these sources of authority, because as discussed in the text above, Rousset has not established basic standing to assert a claim that his communications were unlawfully intercepted by Defendants on behalf of the government.

11

supports particularized factual allegations that the plaintiff's own communications were caught up in dragnet surveillance (*Jewel*, 673 F.3d at 910).

In contrast, Judge Bissoon noted, "courts have refused to find standing based on naked averments that an individual's communications must have been seized because the government operates a data collection program and the individual utilized the service of a large telecommunications company or companies." *Schuchardt*, 2015 U.S Dist. LEXIS 132962 at *15-16 (citing *Amnesty Int'l*, 133 S. Ct. at 1148, *Klayman*, 800 F.3d at 563-64, 565-67). Rousset's allegations amount to exactly this type of general hypothesis. Far from pointing to specific evidence of a dragnet that necessarily includes *his* communications at or near the time he filed suit in September of 2014, Rousset relies on allegations made in 2006 by an employee of AT&T concerning interception of the telecommunications content of "AT&T customers in the San Francisco area." Am. Compl. [Dkt. #50] at ¶ 63. Rousset avers this employee testified (in 2006) that AT&T was "expanding this program to St. Louis and other cities to access all U.S. domestic e-mail content." *Id.* at ¶ 62. Plaintiff has provided no specific factual allegations to tie these 2006 speculations about AT&T's future expansion plans to any actual surveillance facilities located in or collecting data from Texas. Nor has Plaintiff offered anything other than generalized speculation that AT&T is now collecting "100% of all AT&T domestic email" to support his claims that his own email content was being shared with any government agency when he filed suit in 2014 or at any other relevant time period.[4]  *Id.* at ¶ 68. In this respect, Plaintiff "is indistinguishable from every other American subscribing to the services of a major

---

[4] As AT&T points out, Plaintiff's federal statutory claims are governed by a four year statute of limitations, 28 U.S.C. § 1658, as are his contract claims,  TEX. CIV. PRAC. & REM. CODE § 16.004. Any *Bivens* claims against Defendants as quasi-government actors or common law tort claims against Defendants as private parties are governed by a two year limitations period.  TEX. CIV. PRAC. & REM. CODE § 16.003; *Spotts v. United States*, 613 F. 3d 559, 573 (5th Cir. 2010).  The most generous possible "relevant time period," then, would be four years prior to the date Plaintiff filed suit—from September 2014 back to September 2010.  None of the testimony or documentary footage on which Plaintiff relies is dated later than 2007, some three years before the relevant time frame.

telephone and/or internet service provider." *Schuchardt*, 2015 U.S Dist. LEXIS 132962 at *16. It is axiomatic that "generalized grievances 'common [to] all members of the public' do not confer standing." *Id.* at *17 (citing *Schlesinger v. Reservists Comm. To Stop the War*, 418 U.S. 208, 220 (1974). Therefore, the Magistrate Court RECOMMENDS that all of Plaintiff's claims founded on AT&T and Yahoo's purported sharing of his email content and internet history with government agencies be DISMISSED WITHOUT PREJUDICE. The complaint reveals no factual basis to find that Plaintiff has any standing to pursue such claims. *Schuchardt*, 2015 U.S Dist. LEXIS 132962 at *16-17.

    B.  **Plaintiff Has Standing With Respect to Alleged Commercial Data Mining**

Plaintiff's claims with respect to alleged commercial data mining are based on his own contracts with AT&T and Yahoo. Specifically, Plaintiff alleges that AT&T and Yahoo collect, store, and distribute to third parties the content of his emails and other information about his internet usage for commercial gain, without his effective consent, and that both Defendants have inserted misleading language into their contracts that "circumvents" Plaintiffs' privacy rights under federal law**.** AT&T and Yahoo have each attached the terms of service that govern their contractual relationships with Plaintiff.[5] Each of Defendants' respective terms of service advises the user that the service provider analyzes, stores, and distributes data, including content generated by the user. Plaintiff's contention that he did not consent effectively to this data collection and distribution is minimally sufficient to establish standing with respect to his commercial data mining claims. *See In Re Google Inc. Gmail Litig.*, No. 13-MD-02430-LHK, 2013 U.S. Dist. LEXIS 172784, *61-62 (N.D. California, Sept. 26, 2013) (alleged violations of

---

[5] As these documents are integral to Plaintiff's complaint, the court may consider them without converting Defendants' respective motions to dismiss into motions for summary judgment. FED. R. CIV. P. 12(d); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

statutes creating individual legal rights (such as the Wiretap Act) are sufficient to create standing) (citing *Edwards v. First. Am. Fin. Corp.*, 610 F.3d 514, 517 (9th Cir. 2010)).

Of course, whether such an allegation is sufficient to state a viable claim for relief on the merits under *Twombly*, 550 U.S. at 555-57, is a different question.  The merits of Plaintiff's commercial data mining claims need not be reached with respect to AT&T because of its binding arbitration clause, dicussed in Section III.C, *infra*.  As Yahoo's Motion to Dismiss must be determined on the merits, however, whether Plaintiff's claims meet the *Twombly* and *Iqbal* "plausibility" standard will be discussed in more detail in Section III.D, *infra*.  *Twombly*, 550 U.S. at 555-57; *Iqbal*, 556 U.S. at 678.

### C. **Plaintiff's Commercial Data Mining Claims Against AT&T Are Subject To Arbitration**

AT&T contends Plaintiff's claims founded on allegations of commercial data mining should be dismissed because they are subject to a binding arbitration agreement in Plaintiff's Terms of Service (ToS).  Plaintiff argues enforcement of the arbitration clause would be unfair because the internet service contract is a contract of adhesion.  He also asserts the limitation of liability in AT&T's terms of service is unconscionable.

The Federal Arbitration Act ("FAA") provides that a written agreement to arbitrate related to a transaction involving commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *AT&T Mobility v. Conception*, 131 S. Ct. 1740, 1746 (2011).  Plaintiff's argument that the AT&T terms of service constitute a contract of adhesion is not grounds for revocation.  *Dillard v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.*, 961 F.2d 1148, 1154 (5th Cir. 1992) ("Adhesion contracts are not automatically void.")  "The fact that an arbitration agreement is included in a

contract of adhesion renders the agreement procedurally unconscionable only where the stronger party's terms are unnegotiable *and* the weaker party is prevented by market facts, timing or other pressures from being able to contract with another party on more favorable terms or to refrain from contracting at all." *Bell v. Koch Foods of Miss., LLC*, 358 F. App'x. 498, 503 (5th Cir. 2009) (internal citations omitted).

Plaintiff contends he has checked with other internet service providers and found they require the same type of consent to data monitoring he challenges in this case. However, in determining whether a dispute is subject to arbitration, the court "may consider only issues relating to the making and performance of the agreement to arbitrate." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967). Under § 4 of the FAA, "the federal district court ascertains only whether the arbitration clause covers the allegations at issue. 'If the dispute is within the scope of the arbitration clause, the court may not delve further into the merits of the dispute.'" *Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 471 (5th Cir. 2002) (quoting *Snap-On Tools Corp. v. Mason*, 18 F. 3d 1261, 1267 (5th Cir. 1994)). Whether the requirement that users waive some privacy rights or the limitation on liability contained in AT&T's contract terms are procedurally and substantive unconscionable are issues for the arbitrator, not this court, to decide. *Primerica*, 304 F.3d at 471. Therefore, the Magistrate Court RECOMMENDS Plaintiff's claims against AT&T based on allegations of commercial data mining be DISMISSED WITHOUT PREJUDICE.

D.  **Plaintiff's Commercial Data Mining Claims Against Yahoo Fail on The Merits**

As noted in Section II.C, above, Yahoo's motion to dismiss pursuant to 12(b)(3) on the basis of its forum selection clause is foreclosed by the Supreme Court's recent decision in *Atlantic Marine*, 134 S. Ct. at 577. Yahoo's alternative motion to dismiss Plaintiff's claims on

the merits should, however, be granted.  Yahoo contends Plaintiff had clear, effective notice that by agreeing to Yahoo's terms of service, he was giving his consent to monitoring and distribution of his email content.  Plaintiff himself specifically references "Section 1(c)" of Yahoo's "terms and conditions," which he acknowledges expressly "allow[s] Yahoo to reading, collecting, and storing Plaintiff's email [*sic*]." Am. Comp. [Dkt. #50] at ¶90.  Indeed, Judge Lucy Koh, dealing with multidistrict litigation regarding Yahoo's privacy policies, recently analyzed substantively similar terms of service and found they gave Yahoo users actual notice as a matter of law regarding Yahoo's ability and intent to monitor and disseminate email content, such that Yahoo users who clicked the agreements had effectively consented to such monitoring.  *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1029-30 (N.D. Tex. Aug. 12, 2014).

Plaintiff nevertheless argues his consent was not effective because contract provisions cannot "circumvent" the privacy protections of the ECPA and the Fourth Amendment.  Am. Comp. [Dkt. #50] at ¶90.  On the contrary, the ECPA contains a safe harbor provision specifically allowing the disclosure of data content with the user's consent.  18 U.S.C. § 2701(c)(2).  And—while the undersigned very much doubts there is any viable argument that Yahoo's consumer contract makes it a government actor subject to the Fourth Amendment—it is axiomatic that constitutional rights (particularly Fourth Amendment privacy rights) may be knowingly waived.  *See, e.g., United States v. Powell*, 574 F. App'x 390, 393-94 (noting "plea bargains are essentially contracts" and finding Powell "contractually waived" his right to appeal an alleged Fourth Amendment violation).  Because Yahoo has established Plaintiff gave his effective consent to the monitoring and distribution of his data content by Yahoo, the Magistrate Court RECOMMENDS Plaintiff's claims against Yahoo based on alleged commercial data monitoring be DISMISSED WITH PREJUDICE.

Finally, Defendants move for dismissal of Plaintiff's claims against the individual executives of each company, Marissa Mayer and Randall Stephenson. Plaintiff has made no factual allegations tying either individual defendant to any alleged wrongdoing. As discussed above, even if Plaintiff could make out some respondeat superior theory, he has not established any viable theory of liability to which it might be attached in this court. Therefore, the Magistrate Court recommends Plaintiffs' claims against Marissa Mayer and Randall Stephenson be DISMISSED WITHOUT PREJUDICE.

### III. RECOMMENDATIONS

For the reasons outlined above, the Magistrate Court RECOMMENDS that all of Plaintiff's claims founded on AT&T and Yahoo's purported sharing of his email content and internet history with government agencies be DISMISSED WITHOUT PREJUDICE.

The Magistrate Court FURTHER RECOMMENDS Plaintiff's claims against AT&T based on allegations of commercial data mining be DISMISSED WITHOUT PREJUDICE.

The Magistrate Court FURTHER RECOMMENDS Plaintiff's claims against Yahoo based on alleged commercial data monitoring be DISMISSED WITH PREJUDICE.

The Magistrate Court recommends Plaintiffs' claims against Marissa Mayer and Randall Stephenson be DISMISSED WITHOUT PREJUDICE.

SIGNED December 28, 2015

_____
MARK LANE
UNITED STATES MAGISTRATE JUDGE